RYAN ALEXANDER
Nevada Bar No. 10845
RYAN ALEXANDER, CHTD.
3017 West Charleston Blvd., Ste. 58
Las Vegas, NV 89102
Phone: (702) 868-3311
Fax: (702) 822-1133
Ryan@RyanAlexander.us

ROBERT TELLES
Nevada Bar No. 13597
ACCOLADE LAW
3017 West Charleston Blvd., Ste. 54
Las Vegas, NV 89102
Phone: (702) 337-3000
Fax: (702) 425-9953
Rob@AccoladeLaw.com
*Attorneys for Plaintiffs and on
Behalf of Others Similarly Situated*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| EUNICE DOMINGUEZ, ANNETTE CLAYTON, MAGDALENA GUEVARA, MARIA BUSTOS, MARIA MENDEZ-QUIONEZ and MARIA LLAMAS, as Individuals and On Behalf of Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>OZONE SOLUTIONS, INC., an Iowa Corporation, and DOES 1-10, inclusive, and ROE CORPORATIONS 1-10, inclusive,<br><br>Defendants. | Case No.: 2:16-cv-1141<br><br>**COMPLAINT**<br>1. **Strict Products Liability**<br>2. **Inadequate Warnings**<br>3. **Negligence**<br>4. **Breach of Express Warranty**<br>5. **Breach of Implied Warranty of Merchantability**<br>6. **Negligent Misrepresentation**<br>7. **Intentional Misrepresentation**<br><br>**JURY DEMAND** |

COMES NOW Plaintiffs EUNICE DOMINGUEZ, ANNETTE CLAYTON, MAGDALENA GUEVARA, MARIA BUSTOS, MARIA MENDEZ-QUIONEZ and MARIA LLAMAS, as individuals and on behalf of others similarly situated, (collectively "Plaintiffs"),

1

RYAN ALEXANDER CHTD.
3017 WEST CHARLESTON BOULEVARD, SUITE 58, LAS VEGAS, NEVADA 89102

by and through their counsels Ryan Alexander, Esq. and Robert Telles, Esq., submit herein this COMPLAINT against OZONE SOLUTIONS, INC., DOES 1-10, ROE Corporations 1-10, INCLUSIVE, ("Ozone Solutions"), and allege the following:

## I.
## PARTIES

1. Plaintiff EUNICE DOMINGUEZ is, and at all times relevant to this Complaint was, a resident of Clark County, in the state of Nevada.

2. Plaintiff ANNETTE CLAYTON is, and at all times relevant to this Complaint was, a resident of Clark County, in the state of Nevada.

3. Plaintiff MAGDALENA GUEVARA is, and at all times relevant to this Complaint was, a resident of Clark County, in the state of Nevada.

4. Plaintiff MARIA BUSTOS is, and at all times relevant to this Complaint was, a resident of Clark County, in the state of Nevada.

5. Plaintiff MARIA MENDEZ-QUIONEZ is, and at all times relevant to this Complaint was, a resident of Clark County, in the state of Nevada.

6. Plaintiff MARIA LLAMAS is, and at all times relevant to this Complaint was, a resident of Clark County, in the state of Nevada.

7. Defendant OZONE SOLUTIONS, INC. is, and at all times relevant to this Complaint was, an Iowa Corporation with its principal place of business at 451 Black Forest Rd, Hull, IA 51239. Defendant OZONE SOLUTIONS, INC. is and at all times relevant herein doing business in and/or having directed its activities at the State of Nevada.

8. Plaintiff is unaware of the true names and capacities, whether individual, corporate, Associate, or otherwise, of DOES 1-10, and ROE CORPORATIONS 1-10, and therefore sue these Defendants, and each of them, by such fictitious names. Plaintiffs will seek leave of this Court to amend this complaint when the status and identities of these Defendants are ascertained.

9. At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of its agency and was subject to and under the supervision of its co-defendants.

## II.
## JURISDICTION AND VENUE

10. Jurisdiction is proper in District of Nevada pursuant to 28 U.S.C. §1332(a)(1).

11. Supplemental jurisdiction over state law claims is proper pursuant to 28 U.S.C. §1367(a).

12. Venue is proper as the incident for which Plaintiffs complain and for which Defendant is liable arises out of a defective product sold, installed and maintained in Clark County, Nevada. Plaintiffs sustained their injuries while using and being in the presence of the Defendant's product in Clark County, Nevada.

## III.
## GENERAL ALLEGATIONS

**A.    The Ozone Generator System**



13.  OZONE SOLUTIONS develops, manufactures, distributes, sells and maintains industrial machines that create the compound ozone ($O_3$) and mix it with water for cleaning. Among various products, they develop, sell and maintain a laundry system that uses ozone.

14. Defendants market that,

> "[o]zone washing increases textile life, reduces energy costs, allows faster fill rates, shorter wash cycles, and even shorter drying times. Whiter, softer, sanitized, fresh smelling, and longer lasting linens and clothes results in huge savings. Ozone Solutions' industry leading technology offers a detergent, chemical, and odor free solution in areas such as households, hotels, hospitals, industrial laundry facilities, etc. Ozone allows users to achieve high quality standards without the use of hot water and chemicals, due to it being a highly effective oxidizer using only cold water."

http://www.ozonesolutions.com/application/laundry .

15. Ozone generators accelerate air with fans, and then use an electrically charged corona to convert oxygen (O2) to ozone (O3) by melding an additional oxygen molecule.

16. While some ozone occurs naturally in Earth's atmosphere, and as a result of lightning strikes or smog pollution, ozone is not healthy for human consumption and is not equal to oxygen: ozone is a toxic gas with vastly different chemical and toxicological properties from oxygen.

17. Ozone is a molecule composed of three atoms of oxygen. Two atoms of oxygen form the basic oxygen molecule--the oxygen we breathe that is essential to life. The third oxygen atom can detach from the ozone molecule, and re-attach to molecules of other substances, thereby altering their chemical composition. It is this ability to react with other substances that forms the basis of OZONE SOLUTIONS' claims of "cleaning."

18. The same chemical properties that allow high concentrations of ozone to react with organic material outside the body give it the ability to react with similar organic material that makes up the body, and potentially cause harmful health consequences. When inhaled, ozone can damage the lungs. Relatively low amounts can cause chest pain, coughing, shortness of breath and throat irritation. Ozone may also worsen chronic respiratory diseases such as asthma and compromise the ability of the body to fight respiratory infections. People vary widely in their susceptibility to ozone. Healthy people, as well as those with respiratory difficulty, can experience breathing problems when exposed to ozone. Exercise during exposure to ozone causes a greater amount of ozone to be inhaled, and increases the risk of harmful respiratory effects. Recovery from the harmful effects can occur following short-term exposure to low levels of ozone, but health effects may become more damaging and recovery less certain at higher levels or from longer exposures (US EPA, 1996a, 1996b).[1]

19. According to the United States Environmental Protection Agency, Ozone can:
   a. **Irritate the respiratory system**, triggering cough, irritation or soreness in the throat, or cause chest tightness or pain when taking a deep breath;

---

[1] https://www.epa.gov/indoor-air-quality-iaq/ozone-generators-are-sold-air-cleaners
See also, *Health Effects of Exposure to Ozone* http://www.eea.europa.eu/publications/TOP08-98/page010.html

4

b. **Reduce lung function**. This can make it more difficult as deeply and vigorously as one normally would, especially when exercising. Breathing starts to feel uncomfortable with more rapid and shallow breaths than normal;

c. **Inflame and damage cells that line the lungs.**

d. **Make the lungs more susceptible to infection.**

e. **Aggravate asthma.** People with asthma may have symptoms that require a doctor's attention or the use of medication. Ozone makes people more sensitive to allergens—the most common triggers for asthma attacks. Also, asthmatics may be more severely affected by reduced lung function and airway inflammation.

f. **Aggravate other chronic lung diseases such as emphysema and chronic bronchitis.**

g. **Cause permanent lung damage.** In adults, ozone exposure may accelerate the natural decline in lung function that occurs with age;

h. **Many of these effects can lead to increased work absences, visits to doctors and emergency rooms, and hospital admissions.**

i. **"Research also indicates that ozone exposure can increase the risk of premature death from heart or lung disease…"**

*Ozone and Your Health*, https://www3.epa.gov/airnow/ozone-c.pdf .

**B.     Plaintiffs Have Repeatedly Suffered Ozone Exposure Due to Defects and Failures of the Ozone Generators and Incurred Severe Injuries**

20.    Plaintiffs, and those similarly situated, are all employees of the Luxor Las Vegas hotel and casino ("Luxor") in Las Vegas, Nevada.

21.    Luxor has installed five of OZONE SOLUTIONS' systems and machines (collectively, the "Ozone Generator") in its laundry facilities.

22.    OZONE SOLUTIONS supports these Ozone Generators and maintains them.

23.    Since May 21, 2014, Plaintiffs and those similarly situated have been repeatedly exposed to excessive levels of toxic ozone while working at Luxor.

24.    Plaintiffs have suffered pain and complications from the Ozone Generators, including but not limited to the following symptoms and medical diagnoses:

   a.   Abdominal results of pulmonary function;

   b.   Acute bronchospasm;

5

   c. Acute laryngitis;

   d. "Chemical inhalation;"

   e. Chest pains;

   f. Conjunctivitis;

   g. Contact and Exposure to "OTH Hazard;"

   h. Headaches;

   i. Hoarseness of voice and breathing;

   j. Loss of sense of smell;

   k. Loss of sense of taste;

   l. Nausea;

   m. Pain and swelling of the tongue;

   n. Shortness of breath;

   o. Sick leave and FMLA leave;

   p. Sore throat;

   q. Stomach ache;

   r. Swelling of the eyes and inflammation of the eyelids;

   s. Swelling of the neck;

   t. "Toxic effect of Unspecified Gas, Fume or Vapor;"

   u. Voice disturbance;

   v. Vomiting.

25. In short, the Ozone Generators are poisoning the Plaintiffs.

26. Components of the Ozone Generators at the Luxor have broken, malfunctioned or otherwise failed. The Ozone Generators are not performing according to the specifications of the manufacturer nor according to the representations made to PLAINTIFFS when they agreed to use the device, or merely be in its presence, at Luxor.

27. The complications suffered by Plaintiffs were caused by the defective design, warnings, construction, negligent maintenance and unreasonably dangerous character of the Ozone Generators that were installed at Luxor.

RYAN ALEXANDER CHTD.
3017 WEST CHARLESTON BOULEVARD, SUITE 58, LAS VEGAS, NEVADA 89102

6

28. Plaintiffs have repeatedly sought medical help. They have missed considerable amounts of work due to the symptoms of ozone exposure.

29. Upon information and belief, OZONE SOLUTIONS performed the maintenance of the Ozone Generators, which did not stop the repeated overexposure to ozone.

30. OZONE SOLUTIONS already knew that there were notable problems with the Ozone Generators at the time it was delivered for Plaintiffs' use, and that certain risks were known unto OZONE SOLUTIONS that were not disclosed to Plaintiffs.

31. Upon information and belief, OZONE SOLUTIONS made repeated repairs and maintenance to the Ozone Generators but this did not stop the repeated ozone leaks and overexposures, and OZONE SOLUTIONS went as far as replacing the generators or their critical components at Luxor.

32. Despite installing new Ozone Generators or components, the Plaintiffs suffered continued overexposures to ozone, with many Plaintiffs being treated for chemical exposure, poisoning and requiring medical care even through the Spring of 2016.

33. The Ozone Generators create a critical health hazard for the Plaintiffs at their place of employment.

34. OZONE SOLUTIONS made reassurances that the Ozone Generators were not defective.

35. Indeed, Plaintiffs were repeatedly told that their conditions were merely allergies. Upon information and belief, OZONE SOLUTIONS was in communication with Luxor and Luxor's contracted medical services provider Concentra to blame any possible cause of the Plaintiffs' consistent and similar medical conditions on causes *other than* the Ozone Generators. Upon information and belief, OZONE SOLUTIONS worked with Luxor in other proceedings to defend and aggressively suppress any allegation that the Ozone Generators were the source of the Plaintiffs' multitude of related illnesses.

36. However, after so many of the Plaintiffs and those similarly situation showed the same effects of ozone overexposure, there began to be concessions by Concentra's medical care providers that it was in fact ozone causing the Plaintiffs' conditions.

37. Had Defendants not concealed the known defects, the failure rate, the known complications and the unreasonable risks associated with the use of the Ozone Generators, Plaintiffs would not have consented to using or being present around the Ozone Generators being operated at the Luxor.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action on behalf of others similarly situated as a class action pursuant to Fed. R. Civ. P. 23.

39. Plaintiffs will fairly and adequately represent and will protect the interests of the class, and have retained counsel with experience litigating product defect and negligence claims.

40. The proposed class includes all of the laundry employees ("Laundry Class") of Luxor employees, and the likely class members are so numerous that joinder of all members is impracticable.

41. A collective and class action suit, such as this, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of product defect litigation, making it virtually impossible for members of the Class to individually redress the wrongs done to them.

42. The Laundry Class worked with or near the Ozone Generators as Luxor employees, and are predominantly women of Hispanic descent. The Plaintiffs who are named here have suffered the effects of ozone overexposure, and the claims or defenses of the representative parties are typical of the claims or defenses of the Laundry Class.

43. Furthermore, even if any member of the Class could afford individual litigation against OZONE SOLUTIONS, it could and would be unduly burdensome to the judicial system. The collective action is, therefore, the most efficient method by which to resolve these claims.

44. Common questions of fact and law predominate the Laundry Class as a whole. Those include:

a. Whether Defendants knowingly and voluntarily designed, manufactured, advertised, promoted, marketed, sold, and/or distributed the Ozone Generators in a dangerous condition for use by the public and, in particular, the Plaintiffs;

b. Whether the Ozone Generators have released ozone into the Luxor at rates that can cause injury;

c. Whether OZONE SOLUTIONS made representations or warranties regarding the safety of the Ozone Generators, produced information and whether that information was false or misleading;

d. Whether OZONE SOLUTIONS performed maintenance on the Ozone Generators and whether that maintenance was performed negligently;

e. Whether Plaintiffs and the Class have sustained damages caused by ozone exposure and if so, what is the proper measure of their damages.

45. Notice of the pendency and any resolution of these actions can be provided to Class Action members by email, mail, print, or internet publications.

**FIRST CAUSE OF ACTION**

*Strict Products Liability*

46. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

47. The Ozone Generator was designed, tested, manufactured, advertised, promoted, marketed, sold, and/or distributed by OZONE SOLUTIONS who where in the business of selling said product.

48. Defendants had a duty to design, manufacture, advertise, promote, market, sell, and/or distribute the Ozone Generator in a condition that was not unreasonably dangerous for its normal, intended use.

49. Defendants breached this duty by negligently designing, manufacturing, advertising, promoting, marketing, selling, and/or distributing the Ozone Generator in a condition that is safe for its normal and intended use.

50. At all times relevant herein, the Ozone Generator was designed, manufactured, advertised, promoted, marketed, sold, and/or distributed by Defendants in an unsafe, defective, and inherently dangerous condition.

51. Defendants knew, or should have known, that at all times herein mentioned that the Ozone Generator was defective and is inherently dangerous and unsafe.

52. Defendants knowingly and voluntarily designed, manufactured, advertised, promoted, marketed, sold, and/or distributed the Ozone Generator in a dangerous condition for use by the public and, in particular, Plaintiffs.

53. Defendants designed, manufactured, advertised, promoted, marketed, sold and/or distributed a defective product which when used in its intended or reasonably foreseeable manner created and unreasonable risk to the health of consumers and to Plaintiffs, in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs.

54. At all times herein mentioned, the Ozone Generator posed a risk of danger inherent in the design that outweighed the benefits of that design.

55. At all times relevant herein, the Ozone Generator was expected to and did reach the usual consumers, handlers, and persons without change in the condition in which it was designed, tested, manufactured, advertised, promoted, marketed, sold, and/or distributed by Defendants.

56. The Ozone Generators were expected to, and did reach Plaintiffs without change in the condition in which they were designed, tested, manufactured, advertised, promoted, marketed, sold, and/or distributed.

57. Plaintiffs were persons reasonably expected to be affected by the Ozone Generators; Plaintiffs were an intended and foreseeable user of the Ozone Generators; the Ozone Generators were installed for use by Plaintiffs in the manner intended and foreseeable by Defendants.

58. At the time of the installation of the Ozone Generators at Luxor, the aforesaid products were being used for the purposes and in a manner normally intended, namely for laundry cleaning.

10

59. At all times relevant herein, the Ozone Generators failed to perform in the manner reasonably expected by consumers and end users, including Plaintiffs.

60. The Ozone Generators' unsafe, defective, and inherently dangerous conditions were the direct and proximate cause of injury to Plaintiffs.

61. As a direct and proximate result of Defendants' placement of the defective Ozone Generators into the stream of commerce, Plaintiffs experienced or will experience severe harmful effects of ozone exposure including but not limited nose, throat, eye, olfactory, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

62. In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

63. Plaintiffs have been forced to retain the services of an attorney to pursue the claims herein, and are therefore entitled to reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

*Strict Products Liability – Inadequate Warnings*

64. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

65. At all times relevant herein, Defendants knew, or should have known, that at all times herein mentioned that the Ozone Generators were defective and inherently dangerous and unsafe.

66. Defendants knew or should have known that the Ozone Generators would release ozone into the environs around them and therefore give rise to severe harmful effects of ozone exposure including but not limited ear, nose, throat, eye, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are

permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

67. Further, the Ozone Generators which were placed into the stream of commerce by Defendants were installed in a manner reasonably anticipated by Defendants.

68. Defendants placed the Ozone Generators into the stream of commerce without adequate warning.

69. As a direct and proximate result of Defendants' placement of the defective Ozone Generators into the stream of commerce, Plaintiffs experience and/or will experience severe harmful effects of ozone exposure including but not limited nose, throat, eye, olfactory, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

70. In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

71. Plaintiffs have been forced to retain the services of an attorney to pursue the claims herein, and are therefore entitled to reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION

*Negligence*

72. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

73. Defendants failed to exercise reasonable care in the promoting, instruction, warning, distribution, disclosure to users of the Ozone Generators that the devices were, in fact, dangerous and defective.

74. Defendants herein knew or should have known that Ozone Generators were unsafe and unfit for use by reasons set forth above.

75. Defendants troubleshoot, diagnose, maintain and repair the Ozone Generators for Luxor and performed such repairs negligently.

76. Defendants knew or should have known that those individuals using the Ozone Generators or in the presence of Ozone Generators would suffer severe harmful effects of ozone exposure including but not limited nose, throat, eye, olfactory, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

77. Defendants knew or should have know that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

78. In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

79. Defendants' negligence was the proximate cause of plaintiff's physical, metal and emotional injuries and harm, and economic loss that she has suffered and/or will continue to suffer.

80. By reason of the foregoing, Plaintiffs experienced and/or will experience severe harmful effects including but not limited to nose, throat, eye, olfactory, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

### FOURTH CAUSE OF ACTION

*Breach of Express Warranty*

81. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

13

82. Defendants expressly warranted that the Ozone Generators were safe and effective ozone generators for laundries.

83. The Ozone Generators placed into the stream of commerce by Defendants did not conform to these express representations, giving rise to excessive and toxic levels of ozone, unnecessary physical injury, pain and suffering, and debilitation suffered by Plaintiffs.

84. As a direct and proximate result of the Ozone Generators' failure conform to Defendants' express representations, Plaintiffs have suffered and will continue to suffer physical injury, pain and suffering and debilitation.

85. As a direct and proximate result of Defendants' breach of express warranties regarding the safety and effectiveness of the Ozone Generators, Plaintiffs have suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and will continue to suffer such damages in the future.

86. In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression, and fraud, and Plaintiffs is therefore entitled to recover punitive damages.

87. Plaintiffs have been forced to retain the services of an attorney to pursue the claims herein, and are therefore entitled to reasonable attorney's fees and costs.

### FIFTH CAUSE OF ACTION

*Breach of Implied Warranty of Merchantability*

88. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

89. Defendants impliedly warranted that the Ozone Generators were of merchantable quality and safe for the use for which they were intended by Defendants.

90. Plaintiffs reasonably relied upon the skill and judgment of Defendants as that the Ozone Generators were of merchantable quality and safe for their intended use.

91. Contrary to Defendants' implied warranties, the Ozone Generators were not of merchantable quality or safe for their intended use, because the Ozone Generators were unreasonably dangerous as more specifically alleged hereinabove.

92. As a direct and proximate result of Defendants' breach of implied warranties regarding the safety and effectiveness of the Ozone Generators, Plaintiffs have suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering and will continue to suffer such damages in the future.

93. In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive damages.

94. Plaintiffs have been forced to retain the services of an attorney to pursue the claims herein, and are therefore entitled to reasonable attorney's fees and costs.

### SIXTH CAUSE OF ACTION

*Negligent Misrepresentation*

95. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

96. Defendants had a duty to provide adequate and accurate information to users and customers regarding the Ozone Generators.

97. Defendants breached this duty by communicating false information and/or failing to communicate fully and accurately to the public and to Plaintiffs regarding the quality, safety and effectiveness of the Ozone Generators.

98. Defendants knew or should have known that the information they supplied regarding the quality, safety and effectiveness of the Ozone Generators was false.

99. Plaintiffs' employer relied on the information negligently supplied by the Defendants to the detriment of Plaintiffs, thereby purchasing and implanting the Ozone Generator in Plaintiffs' place of work.

100. Plaintiffs and their physicians were justified in their reliance on the information supplied by the Defendants regarding the quality, safety and effectiveness of the Ozone Generators.

101. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs have suffered significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering, and the need revision surgery to repair the physical damage to Plaintiffs caused by the Ozone Generators.

102. Plaintiffs have been forced to retain the services of an attorney to pursue the claims herein, and are therefore entitled to reasonable attorney's fees and costs.

## SEVENTH CAUSE OF ACTION

*Intentional Misrepresentation*

103. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

104. Defendants made representations to Plaintiffs that their Ozone Generator is a high-quality, safe and effective ozone-based laundry system.

105. Before they marketed the Ozone Generators used by Plaintiffs, Defendants knew or should have known of the unreasonable dangers and serious health risks that such an ozone system posed to users like Plaintiffs.

106. As specifically described in detail above, Defendants knew that the Ozone Generator subjected users to excessive and toxic levels of ozone, painful and harmful physical reactions to ozone exposure, side effects including nose, throat, eye, olfactory, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

107. Defendants' representations to Plaintiffs that their Ozone Generator is a high-quality, safe and effective were intentionally false.

16

108. Defendants' failure to fully disclose known dangerous conditions of the Ozone Generator was intentional.

109. Defendants concealed their knowledge of the unreasonable risk and dangers associated with the use of the Ozone Generator to induce Plaintiffs to use and others to purchase the system for use for laundries.

110. Plaintiffs did not know of the falsity of Defendants' representation regarding the Ozone Generator.

111. Plaintiffs relied upon and accepted as truthful the Defendant' representations regarding the Ozone Generator.

112. Plaintiffs had a right to rely on Defendants' representations and in fact did rely upon such representations. Had Plaintiffs known that the Ozone Generators would fail or leak and expose them to ozone and the unreasonable risk of nose, throat, eye, olfactory, tongue and lung conditions and pulmonary disease, they would not have allowed themselves to operate or be in the presence of the Ozone Generators.

113. As a direct and proximate result of Defendants' fraudulent representations, Plaintiffs suffered significant damages, including but not limited to experienced or will experience severe harmful effects of ozone exposure including but not limited nose, throat, eye, olfactory, tongue and lung conditions, lost employment and economic losses, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the attendant risk of complications of pulmonary disease.

114. In taking the actions and omissions that caused these damages. Defendants were guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive damages.

115. Plaintiffs have been forced to retain the services of an attorney to pursue the claims herein, and are therefore entitled to reasonable attorney's fees and costs.

//

//

**JURY DEMAND**

Within Fed. R. Civ. P., Rule 59, the Seventh Amendment to the Constitution of the United States, as well as Article 1, Section 3 of the Constitution of the State of Nevada, or as otherwise may be provided, Plaintiffs hereby demand a jury trial for each of their claims.

…

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, each individually and on behalf of others similarly situated pray for the following relief:

A. Judgment in favor of Plaintiffs and against all Defendants, for damages in such amounts as may be proven at trial;

B. Compensation for both economic and non-economic losses, including but not

C. limited to medical expenses, loss of earnings, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

D. Special Damages in excess of $10,000;

E. Punitive and/or exemplary damages in such amounts as may be proven at trial;

F. Attorneys' fees and costs;

G. Pre- and post-judgment interest and;

H. Any and all further relief, both legal and equitable, that the Court may deem just and proper.

DATED this 21st day of May, 2016.

RYAN ALEXANDER, CHTD.

_____
RYAN ALEXANDER
Nevada Bar No. 10845
3017 West Charleston Blvd., Ste. 58
Las Vegas, NV 89102
Phone: (702) 868-3311
Fax: (702) 822-1133
Ryan@RyanAlexander.us